DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
  *keyes.mike@dorsey.com*
Connor J. Hansen (*pro hac vice pending*)
  *hansen.connor@dorsey.com*
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone:  206.903.8800
Facsimile:  206.903.8820

DORSEY & WHITNEY LLP
Evan Everist (*pro hac vice pending*)
  *everist.evan@dorsey.com*
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  612.340.2600
Facsimile:  612.340.2868

DORSEY & WHITNEY LLP
Kent J. Schmidt (SBN 195969)
  *schmidt.kent@dorsey.com*
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone:  714.800.1400
Facsimile:  714.800.1499

*Attorneys for Plaintiff International
Council for Veterinary Assessment*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL COUNCIL FOR VETERINARY ASSESSMENT,<br><br>               *Plaintiff,*<br><br>v.<br><br>ANIVIVE LIFESCIENCES INC., DAVID BRUYETTE, CODY ARBUCKLE, and DYLAN BALSZ,<br><br>               *Defendants.* | Case No. 2:24-CV-02866<br><br>**VERIFIED COMPLAINT FOR:**<br><br>**1) BREACH OF CONTRACT; AND**<br><br>**2) FEDERAL COPYRIGHT INFRINGEMENT**<br><br>**JURY DEMANDED** |

Plaintiff International Council for Veterinary Assessment by and through its counsel, Dorsey & Whitney LLP, alleges as follows:

## I.        INTRODUCTION & SUMMARY OF RELIEF REQUESTED

1.       This case is about an intentional breach of contract and willful and deliberate acts of copyright infringement perpetrated by individuals and their sophisticated company, all of whom should have known better.

2.       As detailed herein, Plaintiff International Council for Veterinary Assessment ("Plaintiff" or "the ICVA") has developed highly-acclaimed testing resources and related content that are indispensable to the veterinary profession.  The ICVA has invested millions of dollars' worth of time and effort developing its content and protecting it with strict access controls, contractual limitations, and federal copyright registrations.

3.       Without any permission or authority, Defendant Bruyette paid to access the ICVA's secure content under false pretenses.  He copied at least 164 test questions and answers, again with no authority or consent from the ICVA.  One or more of the Defendants then proceeded to: (a) input or upload those test questions and answers into several artificial intelligence ("AI") large language models ("LLMs"); and then (b) falsely claim in a published journal article that AI can take and "pass" the ICVA's veterinarian licensing exam.

4.       Defendants' extreme and volitional conduct violates state and federal laws.  The ICVA seeks all available legal and equitable remedies, including but not limited to, actual damages, statutory damages, attorneys' fees and costs, and preliminary and then permanent injunctive relief.

## II.        PARTIES

5.       The ICVA is a not-for-profit corporation organized under the laws of the state of Illinois that is described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and has a permanent mailing address of P.O. Box 1356, Bismarck, North Dakota, 58502.

6.    Defendant Anivive Lifesciences, Inc. ("Anivive") is a for-profit corporation organized under the laws of the state of Delaware and registered to conduct business in California.  It has a principal place of business at 3777 Worsham Ave., Suite 200, Long Beach, California 90808, and its registered agent is located at 2710 Gateway Oaks Drive, Sacramento, California 95833.

7.    Defendant David Bruyette is an individual and is the Chief Medical Officer at Anivive.  On information and belief, Defendant Bruyette resides in Bell Canyon, California, and works from Defendant Anivive's offices located in Long Beach, California.

8.    Defendant Cody Arbuckle is an individual and is the Chief Technology Officer at Anivive.  On information and belief, Defendant Arbuckle resides in Lomita, California, and works from Defendant Anivive's offices located in Long Beach, California.

9.    Defendant Dylan Balsz is an individual and is the Founder and the Chief Executive Officer at Anivive.  On information and belief, Defendant Balsz resides in Irvine, California, and works from Defendant Anivive's offices located in Long Beach, California.

## III.   JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and § 1338 because this dispute concerns the rights of parties under the Copyright Act, 17 U.S.C. § 101 *et seq.*

11.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.  Plaintiff is an Illinois not-for-profit corporation with a permanent mailing address in North Dakota, while Defendant Anivive is a Delaware corporation with a principal place of business in California, and Defendants Bruyette, Arbuckle, and Balsz reside in California.

12.   This Court has supplemental jurisdiction over the state law claim under

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

28 U.S.C. § 1367 because the state law claim asserted herein is related to the same controversy, specifically Defendants' access, copying, and unauthorized use of materials obtained from the ICVA, which also give rise to the federal cause of action.

13.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants regularly: (a) conduct, transact, and/or solicit business in California and in this judicial district; (b) derive substantial revenue from their business transactions in California and in this judicial district; and/or otherwise (c) avail themselves of the privileges and protections of the State of California such that this Court's assertion of jurisdiction does not offend traditional notions of fair play and due process.  For example, as set forth in more detail below, Defendants Anivive and/or its officers: (a) accessed and copied content from Plaintiff from this judicial district; (b) on information and belief, have stored copies of Plaintiff's materials on computers or servers located in this district, likely in systems owned and managed by Defendant Anivive; and (c) shared that content with their co-Defendants and/or individuals from the University of California-Irvine ("UC Irvine") situated in this judicial district.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and § 1400 because, as described herein, Defendants conduct, transact, and/or solicit business in this judicial district and the actions that give rise to the allegations of this Complaint, namely Defendants' accessing, copying, and use of Plaintiff's materials, occur in this district.

## IV.   THE ICVA'S VETERINARY EDUCATIONAL TESTS AND ASSESSMENTS

### A.   The "NAVLE"

15.     Formed in 1994, the ICVA is a world leader in providing educational tests and assessments for prospective veterinarians.  The ICVA provides its various assessments with the end goals of protecting the public and ensuring optimal animal health and welfare.

16.     One such examination developed by the ICVA is the North American Veterinary Licensing Examination (the "NAVLE," pronounced "nav-lee").  Passing the NAVLE is a requirement for licensure to practice veterinary medicine in all licensing jurisdictions in the U.S. and Canada.  The ICVA works closely with the National Board of Medical Examiners ("NBME") with respect to the administration of the NAVLE.  The NBME is responsible for the exam's delivery, scoring, and score reports, while the ICVA provides subject matter experts for content development and owns the examination.

17.     Taking the NAVLE is a rite of passage for prospective veterinarians and the culmination of years of education.  To qualify for the NAVLE, individuals have to be either: (a) enrolled in, or a graduate of, a college of veterinary medicine or a veterinary school accredited by the American Veterinary Medical Association Council on Education; or (b) have already taken and passed the "Step 3" Examination offered through an educational equivalency program such as the Educational Commission for Foreign Veterinary Graduates or Program for the Assessment of Veterinary Education Equivalency.

18.     The ICVA administers the NAVLE twice per year, in the fall and in the spring, through computer testing centers operated by Prometric.

19.     The NAVLE consists of 360 multiple-choice questions designed to test clinical and professional competencies required of veterinarians and test diagnoses for various species a veterinarian may encounter in practice.

20.     Approximately 15-20% of the NAVLE questions include graphic or pictorial information such as photographs, radiographs, drawings, and charts.  The remainder of the questions are text-based.

21.     Over the years, the ICVA has expended millions of dollars' worth of time and resources in researching, analyzing, and drafting the NAVLE questions and answers.  The NAVLE questions and answers represent the collective judgment and expertise of numerous practicing veterinarians and educators, all of whom are

1  dedicated to ensuring the competencies and proficiencies of prospective
2  practitioners.

3  **B.    The NAVLE Self-Assessment Form 2**

4      22.    The ICVA also offers "NAVLE Self-Assessments."  These Self-
5  Assessments are online practice examinations containing retired questions from
6  previous NAVLE examinations.   Over the years, thousands of prospective
7  veterinarians have turned to the ICVA and the NAVLE Self-Assessments as an
8  indispensable, trusted resource during their preparation process for the NAVLE
9  exam.

10     23.    One of the current Self-Assessment versions offered by the ICVA since
11  2020 is the "NAVLE Self-Assessment Form 2."

12     24.    The NAVLE Self-Assessment Form 2 is comprised of 200 multiple-
13  choice questions, all of which are actual, "retired" questions from prior versions of
14  the NAVLE.  The NAVLE Self-Assessment Form 2 is the only form of the NAVLE
15  Self-Assessments that provides expanded feedback to include the answers to
16  incorrectly answered questions.

17     25.    The NAVLE Self-Assessment Form 2 is intended for use by aspiring
18  veterinarians to help them identify their strengths and weaknesses as they prepare for
19  the NAVLE, and to familiarize them with the format and content of the NAVLE.

20     26.    The ICVA does not permit users to download or print the NAVLE Self-
21  Assessment Form 2, or portions thereof.  Likewise, the ICVA does not offer printed
22  or hard-copy versions of the NAVLE Self-Assessment Form 2.

23     27.    Instead, NAVLE Self-Assessments are web-based and *only* available
24  through the ICVA's website, https://csas.nbme.org/navlesa/Home.do.  Users can
25  obtain free access to two sample NAVLE Self-Assessments (one English and one
26  French, ten items each), can purchase a full version of the NAVLE Self-Assessment
27  (one in English and one in French), or purchase the full version with expanded

28

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

feedback (one in English and one in French).  The expanded feedback form allows the examinee to review the questions **and** answers to incorrectly answered questions.

28.     When taking either the free sample of the NAVLE Self-Assessment or the full version of the NAVLE Self-Assessment Form 2, the website interface displays one question at a time to a test taker, who must answer or skip the question to view the next question.

### C.     Plaintiff Zealously Protects its NAVLE Works of Authorship

29.     To protect the ICVA's considerable investment in the NAVLE and the NAVLE Self-Assessments, including the NAVLE Self-Assessment Form 2, the ICVA has developed Terms, Conditions, and Disclaimers ("the ICVA's Terms"), which participants must agree to when accessing or taking either the free NAVLE Self-Assessment Sample or the full NAVLE Self-Assessment Form 2.

30.     The ICVA's Terms provide, in pertinent part: "The materials presented on the self-assessments are owned and copyrighted by the ICVA.  Any unauthorized reproduction of these materials, by any means, including but not limited to, storage in a retrieval system, transmission, printing, memorization, or distribution is strictly prohibited."   A true and correct copy of the ICVA's Terms is attached hereto as **Exhibit A**.

31.     The ICVA's Terms are displayed to users before they can proceed with accessing or taking the NAVLE Self-Assessment Form 2.  And by participating in a NAVLE Self-Assessment, participants acknowledge that they have read, understood, and agree to be bound by the ICVA's Terms. *See* **Exhibit A**.

32.     The ICVA also diligently protects its investment and systematically secures U.S. copyright registrations for the NAVLE and the NAVLE Self-Assessments.  The NAVLE registrations are obtained by the ICVA using the process detailed in Copyright Office Circular 64 entitled, "Copyright Registration of Secure Tests and Test Items" ("Circular 64").   A true and correct copy of Circular 64 is attached hereto as **Exhibit B**.  Pursuant to this process, a special examination of each

application is made by the Office to ensure the submitted work qualifies as a "secured test."  The required deposit copy is then provided to the Office in *redacted* form.  As the Copyright Office notes in Circular 64, only a "fraction" of tests qualify for these special procedures.

33.   Over the last six years alone, the ICVA has obtained no fewer than 23 copyright registrations relating to its works of authorship, including several relating to various versions of the NAVLE and the NAVLE Self-Assessments.  Attached hereto as **Exhibit C** is a true and correct copy of a list of copyright registrations owned by the ICVA.  The Certificates of Registration referenced therein are *prima facie* evidence of the validity of the ICVA's copyrights in the NAVLE and the NAVLE Self-Assessments.

34.   The ICVA holds copyright registrations for several NAVLE Self-Assessments, including, at least the NAVLE Self-Assessment Form 1, the NAVLE Self-Assessment Form 2, and the NAVLE Self-Assessment Form 3.  *See* **Exhibit C** at 2-3.

35.   One such registration is Copyright Registration No. TX0008913420, entitled, *International Council for Veterinary Assessment NAVLE Self-Assessment Form 2*, which was registered on November 13, 2020 (the "NAVLE Self-Assessment Form 2 Registration").  Attached hereto as **Exhibit D** is a true and correct copy of the certificate of registration for the NAVLE Self-Assessment Form 2 Registration.

36.   The copyright registration is current, valid, and subsisting.

## V.   DEFENDANTS' INTENTIONAL AND WILFUL MISCONDUCT

### A.   Defendants' Published Article is the Product of Intentional, Willful, and Indiscriminate Copying of the ICVA's Works of Authorship

37.   Defendants Bruyette, Arbuckle, and Balsz (the "Executive Defendants"), along with three individuals from UC Irvine, recently authored an article entitled, *AI and Veterinary Medicine: Performance of Large Language*

-7-

*Models on the North American Licensing Examination* ("the Article"), a copy of which is attached hereto as **Exhibit E**.

38.   On information and belief, the Article was published in connection with the Tenth International Conference on Social Networks Analysis, Management and Security ("SNAM-2023").

39.   The Article purports to show that AI models, namely well-known LLMs, are able to answer the majority of NAVLE Self-Assessment questions correctly and one LLM in particular, Chat GPT-4, would purportedly be able to "pass" the NAVLE exam. *See* **Exhibit E**.

40.   The Article makes clear that one or more of the Defendants impermissibly copied the NAVLE Self-Assessment Form 2 from the ICVA's website.  Specifically, at least 164 questions and answers from the NAVLE Self-Assessment Form 2 were copied by Defendants and then fed into these third party LLMs.  *See id.* at 1.

41.   The abstract of the Article confirms that one or more of the Executive Defendants accessed "a 200-question NAVLE self-assessment sourced from ICVA's website."[1]  *See id.*

42.   At no point did the ICVA give any of the Defendants permission to copy the NAVLE Self-Assessment Form 2, much less give them permission to feed the NAVLE Self-Assessment Form 2 into any LLMs, and then publish the results of their "research."

43.   After discovering that the integrity and security of the NAVLE Self-Assessment Form 2 had been severely compromised and the subject of a deeply-flawed analysis in the Article, the ICVA launched an immediate investigation to unearth who was responsible.

---

[1] It is unclear if all 200 questions were illicitly copied, or if the copying was confined to the 164 "text-based" questions only.

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

**B.     The ICVA Discovered Defendant Bruyette, the CMO of Anivive, Obtained Access to the NAVLE Self-Assessment Form 2 Under False Pretenses and Engaged in Wholesale Copying**

44.     Upon reviewing its electronic records and files, the ICVA discovered that one of the co-authors of the Article, Defendant Bruyette, purchased access to the full secure NAVLE Self-Assessment Form 2 on approximately June 13, 2023. A true and correct copy of Defendant Bruyette's purchase record is attached hereto as **Exhibit F**.

45.     According to Defendant Bruyette's LinkedIn profile, he is the Chief Medical Office ("CMO") at Anivive.  A true and correct copy of Defendant Bruyette's LinkedIn profile is attached hereto as **Exhibit G**.  As a licensed veterinarian for many decades, Defendant Bruyette had no legitimate need or purpose to access the NAVLE Self-Assessment Form 2.  In fact, on information and belief, he accessed it with the intent to engage in widespread, indiscriminate, wholesale copying of the Self-Assessment Form 2.  And he certainly made good on that intent.

46.     The order number associated with Defendant Bruyette's improper access and purchase is Q753802.  *See* **Exhibit F** at 1.

47.     Prior to purchasing access to the NAVLE Self-Assessment Form 2, Defendant Bruyette was presented with the ICVA Terms. *See* **Exhibit A** at 1.

48.     By navigating to the ICVA's website and taking the NAVLE Self-Assessment Form 2, Defendant Bruyette agreed to be bound by the ICVA Terms. *See id.*

49.     When a purchaser, like Defendant Bruyette, accesses the NAVLE Self-Assessment Form 2, the first screen displayed by the ICVA's interactive website before beginning the assessment warns that the "examination contains test materials that are owned and copyrighted by the ICVA" and expressly states: "*Any reproduction of these materials or any part of them, through any means, including but not limited to, copying or printing of electronic files, reconstruction through*

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

***memorization and/or dictation, and/or dissemination of these materials or any part of them is strictly prohibited***." (emphasis added).  Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of the webpage containing these statements that was displayed to Defendant Bruyette.

50.     The ICVA's internal records show that Defendant Bruyette started the NAVLE Self-Assessment Form 2 on June 14, 2023 and spent less than one hour speeding through it and "answering" the questions.  *See* **<u>Exhibit F</u>** at 2.  This breakneck pace is highly unusual and inherently suspect because each NAVLE question is calibrated and designed to take approximately 65 seconds to complete.[2] This means that if Defendant Bruyette had been genuinely using the assessment for its intended purpose as a practice resource in preparation for the NAVLE, it would have taken him approximately three hours and forty minutes to complete the NAVLE Self-Assessment Form 2.

51.     During Defendant Bruyette's speed session through the Self-Assessment Form 2, he copied at least 164, if not all 200, of the questions and answers.  *See* **<u>Exhibit E</u>** at 2 (the Article states Defendants "considered the 164 text-only questions").  Because the NAVLE Self-Assessment Form 2 cannot be downloaded or printed, Defendant Bruyette and/or one or more of his confederates, would have "screen captured" or photographed each screen, for a total of at least 164 volitional, willful, and intentional acts of copying.

52.     Due to the furious pace of completing the Self-Assessment Form 2 in under an hour, it appears that Defendant Bruyette, and/or one or more of his co-copyists:  (a) hurriedly copied each question; (b) quickly guessed each answer in order to reveal if that guess was correct; and then (c) copied each answer and then generated their own "answer key" as referenced in the Article.

---

[2] *See* Feinberg R.A., Jurich D., Lord J., Case H., and Hawley J., *Examining the Validity of the North American Veterinary Licensing Examination (NAVLE) Time Constraints*, Journal of Veterinary Medical Education 45(3), 381-87 (Fall 2018).

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

53.    On information and belief, Defendant Bruyette distributed copies of the NAVLE Self-Assessment Form 2 questions and answers to, at least, his co-author Defendants and co-authors from UC Irvine for their collective purpose of: (a) feeding one or more of those illicit copies into three separate LLMs; (b) analyzing the results produced by those LLMs based on the improper copying; and then (c) telling the world writ-large about their "accomplishment" as detailed in the Article.

54.    Defendant Bruyette's intentional copying of questions and answers from the NAVLE Self-Assessment Form 2 is a clear violation of the ICVA's Terms, including at least the term providing that "[a]ny unauthorized reproduction of these materials, by any means, including but not limited to, storage in a retrieval system, transmission, printing, memorization, or distribution *is strictly prohibited*." (emphasis added).  *See* **Exhibit A** at 1.

**C.    Defendant Bruyette Engaged in This Willful and Illicit Copying Within the Course and Scope of His Employment with Anivive and For Its Reputational Benefit**

55.    On information and belief, Defendant Bruyette carried out his improper conduct within the course and scope of his employment for Anivive, with the specific purpose of burnishing Anivive's "AI" *bona fides*.

56.    For starters, his company's name and his company email address is emblazoned at the top of the Article.  Further, two of Defendant Bruyette's executive colleagues at Anivive—Defendants Balsz and Arbuckle—are co-authors of the Article.  "Anivive Life Sciences" appears directly below their names at the top of the Article, as do their company email addresses.  *See* **Exhibit E** at 1.  These facts alone strongly suggest that the illicit copying and improper use of the NAVLE Self-Assessment Form 2 was part of a larger corporate effort carried out by company executives for the benefit of Anivive.

57.    According to his LinkedIn profile, Defendant Balsz is the founder and CEO of Anivive.  A true and correct copy of his LinkedIn profile is attached hereto

as **Exhibit I**.

58.    Defendant Arbuckle is the Chief Technology Officer at Anivive.  A true and correct copy of his LinkedIn profile is attached hereto as **Exhibit J**.

59.    Further, the subject matter of the Article co-authored by these corporate executives underscores how their "findings" would lend AI "street cred" to Anivive. Anivive asserts that it is heavily involved with various AI initiatives related to veterinary medicine.

60.    For example, in a recent press release touting that it has joined forces with NFL superstar Ron Gronkowski, Anivive describes itself as "a pet pharmaceutical company at the intersection of biotech, AI, software, and veterinary medicine. Our proprietary software platform accelerates the development of new, affordable treatments for life-threatening diseases in pets."  A true and correct copy of this press release is attached hereto as **Exhibit K**.

61.    Further, Anivive's "X" social media account (formerly "Twitter") asserts that "[w]e combine artificial intelligence, biotech, and veterinary medicine to develop a diverse pipeline of products."  A true and correct copy of Anivive's X account homepage is attached hereto as **Exhibit L**.

62.    On information and belief, the thrust and purpose behind the illicit copying of the NAVLE Self-Assessment Form 2 was to make a "splash" with the veterinarian community, all in service to Anivive's reputation.

63.    For at least the foregoing reasons, the conduct constituting breach of contract and willful copyright infringement was carried out for the benefit of Anivive. It must now be held to account for the harm and damage its executives and the company inflicted on the ICVA.

### D.    All of the Co-Authors of the Article Benefitted from and Materially Contributed to the Acts of Infringement

64.    Just as Anivive stood to benefit from the illicit copying of the NAVLE Self-Assessment Form 2, so did all of the co-authors that participated in and

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

materially contributed to the infringement by researching, drafting, and editing the Article, and failing to stop the ICVA's copyrighted content from being the subject of the published Article.

65. On information and belief, all of these individuals are professionals engaged in the veterinarian medicine industry. They all stood to benefit from publication of the Article centered on one of the hottest technology issues in a generation: AI.

**E. Defendants Also Violated Multiple Terms of Service of Third-Party Technology Companies**

66. The conduct set forth above violated the ICVA's rights in multiple, profound ways. But Defendants' conduct also ran roughshod over the terms of service of third-party technology companies.

67. On information and belief, the ChatGPT-3 and ChatGPT-4 LLMs are owned by third party OpenAI LP.

68. On information and belief, the Bard LLM (now "Gemini") is owned by Google Inc.

69. OpenAI's Terms of Use provide, in relevant part, that a user "may not use our Services for any illegal, harmful, or abusive activity. For example, you may not: Use our Service in any way that infringes, misappropriates or violates anyone's rights" and that by using its Services, users "represent and warrant that [they] have all rights, licenses, and permissions needed to provide Input to our Services." Attached hereto as **Exhibit M** is a true and correct copy of OpenAI's Terms of Use.

70. Defendants did not own or have a license to make a copy of the NAVLE Self-Assessment Form 2, much less any right to feed an illicit copy or copies into ChatGPT-3 and ChatGPT-4.

71. Google's Terms of Service provide, in relevant part, "[i]f you choose to upload or share content, please make sure you have the necessary rights to do so and that the content is lawful" and that by uploading content, a user grant's Google a

"worldwide," "non-exclusive," and "royalty-free" license to Google, authorizing it to (1) "host, reproduce, distribute, communicate, and use" the content; (2) "publish, publicly perform, or publicly display" the content; (3) "modify and create derivative works based on" the content; and (4) "sublicense these rights to other users [and] contractors." Attached hereto as **<u>Exhibit N</u>** is a true and correct copy of Google's Terms of Service.

72.     Defendants did not own or have a license to make a copy of the NAVLE Self-Assessment Form 2, much less any right to feed an illicit copy or copies into Bard.

73.     In sum, it appears that Defendants either: (a) neglected to read OpenAI's Terms of Use and Google's Terms of Service; or (b) read them and simply tossed them aside as a mere "nuisance" standing between Defendants and their "breakthrough" AI research. Either way, Defendants have inflicted severe and irreparable harm on the ICVA.

## VI.   <u>HARM TO PLAINTIFF</u>

74.     Defendants' willful and intentional conduct has significantly harmed Plaintiff and may further disrupt its business. Further disruption will cause irreparable harm.

75.     The ICVA invested a substantial amount of time and resources into creating the NAVLE Self-Assessment Form 2 and protecting that work of authorship. Defendants' conduct has caused Plaintiff to lose control over its protected work.

76.     As a result of Defendants' conduct, the ICVA may have to discard the NAVLE Self-Assessment Form 2 and invest a considerable amount of time, analysis, and resources to create a new self-assessment version.

77.     It is likely to take many months for the ICVA to develop a replacement NAVLE Self-Assessment, requiring significant time, labor, and resources to prepare a new set of questions and answers that maintain the same quality content that the Self-Assessment Form 2 provides the practice test-taker

78.   This not only disrupts the ICVA's business, it is likely to disrupt veterinary students who are studying and preparing for the NAVLE.  Students will be left with no self-assessments with expanded feedback tailored to preparing them for the NAVLE while the ICVA is in the process of developing a new self-assessment.

79.   Students are likely to turn to resources other than the ICVA, including any copies distributed by Defendants, to prepare for the NAVLE while the ICVA is preparing a new self-assessment, resulting in lost profits to the ICVA, diminishment in its position in the veterinary education marketplace, and harm to its stellar reputation.

80.   Defendants' Article also harms the ICVA's reputation as it suggests that the NAVLE Self-Assessment Form 2 or the NAVLE itself is "easy" to pass or can be passed using LLMs.

81.   Defendants' Article admittedly does not take into account the unique scoring scale used on the NAVLE that ranges from 200 to 800, nor the weight assigned to each individual question.

82.   Further, Plaintiff has been collecting data from the NAVLE Self-Assessment Form 2 to validate and study the performance of test takers who complete the NAVLE Self-Assessment Form 2 and, later, the NAVLE.  Plaintiff's four years of analysis is all for naught if it has to abandon the NAVLE Self-Assessment Form 2 and replace it with a new self-assessment.

83.   Individuals who read Defendants' Article are likely to be misled as to the content, difficulty, and scoring process for the NAVLE.

## VII.   CAUSES OF ACTION

### First Cause of Action (Defendant Bruyette)

### Breach of Contract

84.   Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

-15-
VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                         Case No. 2:24-CV-02866

85.     The ICVA's Terms are a valid and enforceable contract.

86.     The ICVA's Terms are displayed to users before they can proceed with accessing and taking the NAVLE Self-Assessment Form 2 and prohibit "[a]ny unauthorized reproduction of these materials, by any means, including but not limited to, storage in a retrieval system, transmission, printing, memorization, or distribution is strictly prohibited."  By participating in the NAVLE Self-Assessment Form 2, participants acknowledge that they have read, understood and agree to be bound by the ICVA's Terms.  *See* **Exhibit A** at 1.

87.     Defendant Bruyette purchased access to the NAVLE Self-Assessment Form 2. *See* **Exhibit F** at 1.

88.     The ICVA's Terms were displayed to Defendant Bruyette before he purchased access.

89.     Defendant Bruyette agreed to the ICVA's Terms by proceeding with the purchase and navigating through the NAVLE Self-Assessment Form 2.

90.     Defendant Bruyette reproduced content from the NAVLE Self-Assessment Form 2 in violation of the ICVA's Terms.

91.     Defendant Bruyette caused content from the NAVLE Self-Assessment Form 2 to be stored in a retrieval system, transmitted, and/or distributed in violation of the ICVA's Terms.

92.     Defendant Bruyette's conduct constitutes a breach of the ICVA's Terms.

93.     Defendant Bruyette's conduct was willful and malicious.

94.     On information and belief, Defendant Bruyette continues to reproduce and distribute materials copied from Plaintiff without its permission.

95.     As a result of Defendant Bruyette's breach, Plaintiff has suffered and continues to suffer monetary and non-monetary injury and harm in an amount to be proven at trial.

96.     Moreover, as a result of Defendant Bruyette's breach, Plaintiff has been injured and faces irreparable harm.  Plaintiff is threatened with losing its competitive advantage and goodwill that would be impossible to fully compensate unless Defendants are enjoined and restrained by order of this Court.

**Second Cause of Action (All Defendants)**

**Direct, Contributory, and Vicarious Copyright Infringement**

**Under 17 U.S.C. § 501, *et seq.***

97.     Plaintiff re-alleges and incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth herein.

98.     Plaintiff owns dozens of copyright registrations covering the NAVLE and the NAVLE Self-Assessment works. *See generally* **Exhibit C**.

99.     Plaintiff owns Copyright Registration No. TX0008913420, entitled, *International Council for Veterinary Assessment NAVLE Self-Assessment Form 2*, which was registered on November 13, 2020.  *See* **Exhibit D** at 2.

100.    The certificate of registration for the NAVLE Self-Assessment Form 2 is *prima facie* evidence of the validity of the ICVA's rights in and to the work.

101.    Defendant Bruyette had actual knowledge of the ICVA's copyright.  He and/or one of his confederates nonetheless secretly, illicitly, willfully, and knowingly made at least one reproduction of the ICVA's protected work in violation of the Copyright Act by taking screen captures or photographs of it on or around June 14, 2023.  *See* **Exhibit F** at 2.  That is an act of willful and deliberate copyright infringement in violation of 17 U.S.C. § 501 *et seq.*

102.    On information and belief, as alleged above, all of the other Defendants either participated in these acts of infringement, exercised control over Defendant Bruyette, had actual or constructive knowledge of the infringement, materially contributed to the infringement, or otherwise benefited from these acts of infringement.  As a result, all of the Defendants are contributorily, vicariously, and jointly and severally liable for the acts of infringement.

103.   As a result of Defendants' infringement, Plaintiff has suffered and continues to suffer monetary and non-monetary injury and harm in an amount to be proven at trial.

104.   As a result of Defendants' infringement, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504 and an award of attorneys' fees and costs.

105.   Moreover, as a result of Defendants' infringement, Plaintiff has been injured and faces irreparable harm.  Plaintiff is threatened with losing its competitive advantage and goodwill that would be impossible to fully compensate unless Defendants are enjoined and restrained by order of this Court.

106.   Defendants' conduct has already damaged Plaintiff and any further reproduction or distribution of NAVLE Self-Assessment Form 2 content will irreparably harm Plaintiff.  Defendants' conduct has caused Plaintiff to lose control over its protected work.  If Defendants were to further reproduce or distribute NAVLE Self-Assessment Form 2 content, Plaintiff would have no control over the format in which it is distributed and the distributed work would not be subject to the ICVA's strict Terms, Conditions, and Disclaimers, which presently protect the work by providing notice that it is protected by copyright and prohibiting any unauthorized reproduction or distribution of NAVLE Self-Assessment Form 2 content.  *See* **Exhibit A** at 1.

107.  Defendants' reproduction and distribution of the NAVLE Self-Assessment Form 2 content is also likely to cause significant reputational harm to Plaintiff and diminish its standing in the marketplace.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and relief against Defendants and respectfully requests that this Court:

1.   Permanently enjoin, restrain, and forbid Defendants, their officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with any of them from:

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                          Case No. 2:24-CV-02866

(i) accessing, downloading or otherwise acquiring materials from the ICVA;

(ii) imitating, copying, reproducing, distributing, disseminating, offering for sale, or selling materials obtained from the ICVA; and

(iii) assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in sub-paragraphs (i)-(ii):

2.    Direct Defendants to return, relinquish, or destroy any materials obtained or derived from the ICVA and to remove from any location under their control any materials obtained or derived from the ICVA;

3.    Direct Defendants to account to the ICVA for its profits arising from the conduct complained of herein;

4.    Award Plaintiff a money judgment for breach of contract, grant compensatory relief for Defendants' willful copyright infringement, the precise amount to be proven at trial, including either actual damages or statutory damages;

5.    Award the ICVA its reasonable attorneys' fees and taxable costs and disbursements of this action, pursuant to the Copyright Act, and the inherent authority of the Court;

6.    Award the ICVA prejudgment interest at the rate provided for under applicable law; and

7.    Award the ICVA such other and further relief as the Court deems just and equitable.

## IX.    JURY DEMAND

The ICVA hereby demands that all claims or causes of action raised in this Complaint be tried to a jury to the fullest extent possible under the United States Constitution.

///

///

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

1    ///

2    Dated:    April 9, 2024                    DORSEY & WHITNEY LLP

3

4                                               By:   */s/ J. Michael Keyes*
                                                J. Michael Keyes (SBN 262281)
5                                                 *keyes.mike@dorsey.com*
                                                Connor J. Hansen (*pro hac vice*)
6                                                 *hansen.connor@dorsey.com*
                                                Columbia Center
7                                                701 Fifth Avenue, Suite 6100
                                                Seattle, WA
8                                                Telephone:  206.903.8800
                                                Facsimile:   206.903.8820
9
                                                Evan Everist (*pro hac vice*)
10                                                *everist.evan@dorsey.com*
                                                50 South Sixth Street, Suite 1500
11                                               Minneapolis, MN 55402
                                                Telephone:  612.340.2600
12                                               Facsimile:   612.340.2868

13                                               Kent J. Schmidt (SBN 195969)
                                                  *schmidt.kent@dorsey.com*
14                                               600 Anton Boulevard, Suite 200
                                                Costa Mesa, CA 92626
15                                               Telephone:  714.800.1400
                                                Facsimile:   714.800.1499
16
                                                *Attorneys for Plaintiff International*
17                                               *Council for Veterinary Assessment*

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR BREACH OF CONTRACT
AND FEDERAL COPYRIGHT INFRINGEMENT                    Case No. 2:24-CV-02866

1

**VERIFICATION**

2       I, Heather Case, declare as follows:

3       1.     I am Chief Executive Officer of the International Council for Veterinary
4  Assessment (the "ICVA"). I have reviewed the foregoing Verified Complaint and
5  verify that the statements made therein are true and correct to the best of my
6  knowledge, information, and belief.

7      2.     I have personal knowledge of the factual matters set forth in the Verified
8  Complaint, including the ICVA's business and conduct, the ICVA's copyrights, the
9  North American Veterinary Licensing Examination ("NAVLE"), the NAVLE Self-
10  Assessments, and the harm caused to the ICVA by Defendants' conduct and if called
11  to testify, I would testify as to those factual matters.

12      3.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under
13  the laws of the United States that the foregoing factual statements in the Verified
14  Complaint are true and correct.

15

Executed on ___April 8___, 2024 in ___Huntley, Illinois.___

16

17

18                              Heather Case

19

20

21

22

23

24

25

26

27

28